**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ROBERT CASTANOS, | No. CV-08-1874-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Pending before the Court is the appeal of Plaintiff Robert Castanos, which challenges the Social Security Administration's decision to deny benefits. (Dkt. # 14.) For the reasons set forth below, the Court affirms that decision in part and vacates that decision in part and remands the case for further proceedings.

## BACKGROUND

On December 9, 2004, Plaintiff applied for disability insurance benefits, alleging a disability onset date of August 10, 2004. (R. at 91; *see also* R. at 131-36.) Plaintiff's date last insured for disability insurance benefits, and thus the date on or before which he must have been disabled, is December 31, 2009. (*See* R. at 124.) Plaintiff's claim was denied both initially and upon reconsideration. (R. at 108-11; R. at 104-06.) Plaintiff then appealed to an Administrative Law Judge ("ALJ"). (R. at 103.) The ALJ conducted a hearing on September 5, 2007. (*See* R. at 62-82.) On October 4, 2007, the ALJ issued an unfavorable

Notice of Decision in which he concluded that Plaintiff was not "under a disability . . . from August 4, 2004 through the date of [the decision]." (R. at 91-98.)

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (R. at 92-98.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity. (R. at 93.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments:

> [Claimant] is status post a work-related injury while lifting a heavy sliding door in August 2004, and he is status post a fusion of C5 through C7 in October 2004. He has bulging discs as C3-C4, headaches, asthma, obstructive sleep apnea, recurrent situational depression, situational anxiety, and chronic pain.

(*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.*)

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income benefits). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

At step four, the ALJ made a determination of Plaintiff's residual functional capacity ("RFC"),[2] concluding that Plaintiff could perform "light unskilled work with postural restrictions that prohibit crawling, crouching, climbing, squatting, or kneeling, with no use of his upper extremities for work above the shoulder level, and no use of his lower extremities for pushing or pulling of foot or leg controls." (R. at 94.) The ALJ thus determined that Plaintiff did not retain the RFC to perform his past relevant work "as a service technician, laborer, delivery driver, and as a laborer loading and unloading trucks." (R. at 96.) The ALJ therefore reached step five, determining that Plaintiff could perform a significant number of other jobs in the national and local economy that meet his RFC limitations. (R. at 97.) Given this analysis, the ALJ concluded that Plaintiff was not disabled. (R. at 98.)

On October 26, 2007, Plaintiff requested that the Appeals Council review the Notice of Decision. (R. at 117-18.) After granting review (R. at 114), the Council concluded that the ALJ failed to properly evaluate medical opinion reports of Dr. Dilip Dhadvai and nurse practitioner Gayle Campbell (R. at 114-15). On February 13, 2008, the Council remanded the case to the ALJ with the following instructions:

> Give further consideration to the treating source opinion . . . and nonexamining source opinion . . . , and explain the weight given to such opinion evidence.
> . . .
> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations. In so doing, evaluate the treating and examining source opinion . . . and explain the weight given to such opinion evidence.
> . . .
> If warranted by the record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational bases.

(R. at 115.) The ALJ conducted a second hearing on the matter on April 21, 2008, in which supplemental evidence was obtained from a vocational expert. (*See* R. at 39-61.) On June

---

[2]RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96-8p (July 2, 1996).

- 3 -

25, 2008, the ALJ again issued an unfavorable Notice of Decision. (R. at 11-21.) In evaluating whether Plaintiff was disabled, the ALJ again undertook the five-step sequential evaluation for determining disability and ultimately came to the same conclusions rendered in his October 4, 2007, Notice of Decision. (*See* R. at 15-21.) Given this analysis, the ALJ again concluded that Plaintiff was not disabled. (R. at 21.) The Appeals Council declined to review the second Notice of Decision. (R. at 4-9.)

Plaintiff filed the complaint underlying this action on October 13, 2008, seeking this Court's review of the ALJ's denial of benefits.[3] (Dkt. # 1.) The case is now fully briefed before this Court. (Dkt. ## 14-16.)

## DISCUSSION

**I.  Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the

---

[3]Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (2004) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

- 4 -

reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II. Analysis

Plaintiff argues that the ALJ erred by: (A) failing to properly consider and evaluate the opinion of treating physician Dr. Terry McLean (Dkt. # 14 at 6, 8-9), (B) improperly rejecting and failing to consider opinions of Nurse Practitioner Gayle Campbell (*id.* at 6-8), and (C) failing to either accept or reject the opinion of treating physician Dr. Dilip Dhadvai (*id.* at 7-8). The Court will address each argument in turn.

### A. Opinion Reports of Dr. McLean

Plaintiff first argues that the ALJ erred at the RFC determination stage by misinterpreting and failing to discuss the objective medical opinions of Dr. McLean, a treating physician.[4] (Dkt. # 16 at 6, 7.) In this case, Dr. McLean, an orthopaedic spine surgeon, treated Plaintiff for spine related impairments from September, 2004, to at least November, 2006. (R. at 309, 531.) At several times during this period, specifically September 22, 2005, and January 31, 2006, Dr. McLean opined that Plaintiff was "temporarily totally disabled." (R. at 206, 333.) Additionally, in October and November of 2004, and February of 2005, Dr. McLean noted that Plaintiff "remains off work." (R. at 305, 312, 316.) Plaintiff contends that the "remains off work" statements indicate that Dr. McLean "continued to keep his patient off work" during the relevant time period. (Dkt. # 14 at 6.) Eventually, on March 3, 2006, Dr. McLean opined that "[w]ith regards to work, at least from the spine standpoint, I do feel [Plaintiff] is capable of working full-time at a sedentary capacity with a change of position every three hours with no overhead lifting or working and maximal lifting of 10 pounds." (R. at 538.)

---

[4]Plaintiff's argument extends only to Dr. McLean's opinions regarding whether Plaintiff was disabled between August 2004 and March 2006. To the extent that Dr. McLean's opinions related to the nature of Plaintiff's impairments or his ability to perform his past relevant work, the ALJ accepted those opinions. (*See* R. at 16, 20.)

- 5 -

In his decision order, the ALJ referred to Dr. McLean's March 3, 2006 opinion (stating that Plaintiff could perform full-time sedentary work), however, the ALJ did not discuss this opinion in the context of whether Plaintiff was disabled during the closed period between August 2004, and March 2006. Additionally, the ALJ failed to address the earlier opinions of Dr. McLean that Plaintiff was "temporarily totally disabled" and unable to work (R. at 206, 305, 312, 316, 333). Plaintiff consequently argues that "the ALJ has made no statement specifically rejecting the opinion of Dr. McLean during [the relevant] timeframe" and "the ALJ should have granted a finite period of benefits as [Dr. McLean's] release is approximately nineteen months after onset, easily meeting the initial 12 consecutive month criterion. (Dkt. # 14 at 6-7.)

The ALJ's failure to consider and evaluate a medical opinion constitutes legal error. Commission regulations state that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). Indeed, "[t]he adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability." S.S.R. 96-5p (July 2, 1996); *see also id.* (pointing out that "adjudicators must always carefully consider medical source opinions about any issue" and that "opinions from any medical source . . . must never be ignored"). Because the ALJ did not consider and evaluate Dr. McLean's opinion that Plaintiff was unable to work/disabled between August 2004, and March 2006, he committed legal error.[5] The legal error is not harmless here because the opinions that the ALJ failed to discuss could alter the ALJ's RFC analysis and ultimate conclusions.

---

[5]Plaintiff also argues that the ALJ afforded improper weight to the opinions of Dr. McLean and the contrary opinions of a nontreating physician, Dr. Keith Cunningham, who examined Plaintiff on May 21, 2005. However, the Court need not address this argument in light of the conclusion that, on remand, the ALJ must address the opinions of Dr. McLean and weigh them in light of the opinions of Dr. Cunningham and other medical opinions. *See infra* part III.

## B. Opinion Reports of Nurse Practitioner Campbell

Plaintiff next argues that the ALJ improperly rejected the opinions of Gayle Campbell, a psychiatric medical health nurse practitioner ("PMHNP"), and failed to consider her opinions at step three and the RFC determination stage.[6] (Dkt. # 14 at 6-8.) In this case, Nurse Campbell treated Plaintiff for psychiatric impairments during 2006 and 2007. During this time period, Nurse Campbell conducted psychiatric evaluations (R. at 622-25, 633-35) and routine follow-up evaluations/treatments (R. 550-51, 555-71, 638-39, 640-51, 657-64, 740-41) with Plaintiff. Nurse Campbell diagnosed Plaintiff with major depression and panic disorder and assigned Global Assessment of Function ("GAF") scores which fluctuated between 49 (R. at 558) and 55 (*See, e.g.*, R. at 654). On May 18, 2006, in a general letter, Nurse Campbell opined that Plaintiff's "symptoms are disabling at this time" and he "is not stable and is not able to work." (R. at 549.) Additionally, in March 2007, Nurse Campbell filled out an RFC questionnaire in which she indicated that Plaintiff has marked limitations in several areas of social functioning, concentration, memory, and ability to carry out instructions. (R. at 547-48.)

In his decision order, at step three, the ALJ referred to the report from Plaintiff's November 7, 2007 psychiatric evaluation, Nurse Campbell's diagnosis, and her opinion of Plaintiff's GAF at that time. (R. at 17.) After discussing this report, the ALJ concluded that

---

[6]Plaintiff also contends that "[a]s a psychiatric nurse practitioner, Ms. Campbell's opinion should be given the weight of a physician under *Gomez* [*v. Chater*]." (Dkt. # 14 at 8.) In *Gomez*, a nurse practitioner's opinion was considered to be a part of a physician's opinion where she worked closely under the supervision of the physician, consulted with the physician numerous times, and was acting as an agent of the physician. 74 F.3d 967, 971 (9thsCir. 1996). Despite concluding, in a single sentence, that Ms. Campbell's opinions should be given the weight of a physician under *Gomez*, Plaintiff makes no attempt to argue the basis for this conclusion. Additionally, Plaintiff points to no facts in the record which support findings that, during her treatment of Plaintiff, Nurse Campbell worked under the supervision of a physician, consulted with a physician, or was acting as an agent of a physician. Therefore, the Court declines to conclude that the ALJ erred by not affording treating physician weight to Nurse Campbell's opinion.

"[a]lthough the undersigned gives some weight to the psychiatric evaluations by Nurse Gayle Campbell . . . , she did not conduct nor was she qualified to perform a clinical evaluation or administer extensive psychological testing." (R. at 17.) Plaintiff now argues that the ALJ's "rejection of [Nurse Campbell's] medical records and opinions is without merit" because a PMHNP is "licensed to provide psychosocial assessment, make treatment plans, and provide psychiatric/differential diagnoses while managing medical care." (Dkt. # 14 at 6.)

Initially, Plaintiff's characterization that the ALJ "rejected" Nurse Campbell's medical records and opinions is unfounded. The ALJ specifically stated that he "gives some weight" to the psychiatric evaluations of Nurse Campbell. (R. at 17.) Plaintiff's main objection, rather, is aimed at the ALJ's conclusion that a PMHNP is not "qualified to perform a clinical examination or administer extensive psychological testing." (Dkt. # 14 at 6, 8.) In support of his objection, Plaintiff attaches a printout from the website www.wikipedia.com, which states that PMHNP's "are licensed to provide emergency psychiatric services, psychosocial and physical assessments of their patients, treatment plans, and to continually manage patient care." (Dkt. # 14 Ex. 1.) This definition, even if accurate, does not establish that the ALJ erred in affording a lesser degree of weigh to Nurse Campbell's reports. The definition provided does not demonstrate that Nurse Campbell is qualified to conduct clinical examinations nor does it provide that she is qualified to administer *extensive* psychological testing. Indeed, Plaintiff does not even argue that a clinical examination or extensive psychological testing were conducted. It does appear, however, that the ALJ did recognize that Nurse Campbell was qualified to and did conduct a psychiatric evaluation to which he properly afforded some weight. *See* S.S.R. 06-3p (Aug. 9, 2006) (explaining that the Social Security Administration "may use evidence from 'other sources,' as defined in 20 [C.F.R. §] 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function" and stating that "[a]lthough the factors in 20 [C.F.R. §] 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to evidence from 'other sources'"); 20 C.F.R. §§ 404.1527(d), 416.927(d) (setting forth the factors that

are considered in deciding how much weight to afford to a medical opinion and stating that the ALJ will "look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed"). Therefore, the ALJ did not err when determining the weight that he would afford to Nurse Campbell's November 7, 2007 report.

Other than discussing the November 7, 2007 report, however, the ALJ did not specifically address, either at step three or when making the RFC determination, the other relevant opinions (R. at 547-49) of Nurse Campbell or other medical source opinions addressing Plaintiff's psychiatric impairments (*See* R. at 235-53, 254-61). On remand, the Appeals Council specifically directed the ALJ, in the context of Nurse Campbell, to "[g]ive further consideration to the treating source opinion . . . and explain the weight given to such opinion evidence." (R. at 115.) Additionally, the Council directed the ALJ to "[g]ive further consideration to the claimant's maximum residual functional capacity" and "evaluate the treating and examining source opinion . . . and explain the weight given to such opinion evidence." (R. at 115.) Plaintiff argues that the ALJ "clearly did not comply with the directives of the remand" because he failed to evaluate the opinion of Nurse Campbell that Plaintiff "is not stable and is not able to work" (R. at 549) and her opinion regarding the severity of Plaintiff's limitations in the areas of social functioning, concentration, memory, and ability to carry out instructions (R. at 547-48). (Dkt. # 14 at 8.) As previously stated, the ALJ's failure to consider and evaluate a medical opinion constitutes legal error. *See supra* part II.A. Because the ALJ did not consider and evaluate certain opinions of Nurse Campbell (R. at 547-49), he committed legal error. This error is not harmless because the opinions that the ALJ failed to discuss could possibly yield a finding of disability under step three or could alter the ALJ's RFC analysis.

**C.    Opinion Report of Dr. Dhadvai**

Plaintiff argues that the ALJ erred by failing to "accept or reject the opinion" of Dr. Dilip Dhadvai, a treating physician.[7] (Dkt. # 14 at 7-8.) In his decision order, after specifically discussing the medical conclusions of Dr. Dhadvai and other treating physicians, the ALJ stated, "As for the opinion evidence, the undersigned gives significant weight to the opinions of the residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services[8] [which] also supported a finding of "not disabled." (R. at 20.) Although the ALJ does not explicitly state that he rejected the RFC opinions of Dr. Dhadvai, it is clear that, after balancing all of the medical opinions, the ALJ choose to reject the RFC opinion of Dr. Dhadvai and accept the contradictory RFC opinions of the physicians employed by the State. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). Therefore, Plaintiff's assertion has no merit.

Plaintiff also argues that the ALJ did "not afford weight" to the RFC opinion of Dr. Dhadvai. (Dkt. # 14 at 8.) A treating physician's opinion is generally entitled to "substantial weight." *Embrey v. Brown*, 849 F.2d 418, 422 (9th Cir. 1988). If the treating physician's opinion is contradicted by the opinion of another physician, however, it may be rejected upon "specific and legitimate reasons" supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey*, 849 F.2d at 421 (quotation omitted).

---

[7]Plaintiff's argument appears only to extend to Dr. Dhadvai's RFC opinions (R. at 583-85). To the extent that Dr. Dhadvai's opinions related to the nature of Plaintiff's impairments or his ability to perform his past relevant work, the ALJ accepted those opinions. (*See* R. at 16, 20.)

[8]RFC opinion evidence provided by several physicians employed by the State contradicted the RFC opinions of Dr. Dhadvai.

In this case, the ALJ discussed Dr. Dhadvai's RFC opinion from March 2007 (R. at 583-85). That opinion provided that Plaintiff suffered impairments that would pose functional limitations in excess of the RFC limitations set forth by the ALJ. Specifically, Dr. Dhadvai opined that, in an eight-hour workday, Plaintiff could sit for less than one hour, stand/walk for less than one hour, and never lift or carry even five pounds. (*Id.*) Dr. Dhadvai also stated that Plaintiff could not crawl, climb, squat, or bend; could only occasionally reach; and could not use his feet for repetitive motions. (*Id.*) Dr. Dhadvai further noted that Plaintiff was severely limited by his pain. (*Id.*)

In the decision order, the ALJ also summarized the conflicting opinions of Dr. McLean, a treating physician, and Dr. Keith Cunningham, an examining physician employed by the State. (R. at 18-19.) Both of these physicians' opinions conflicted in varying degrees with the RFC opinions of Dr. Dhadvai. Specifically, Dr. Cunningham reported that Plaintiff was able to lift/carry 20 pounds occasionally and 10 pounds frequently; has no limitations in standing, walking, or sitting; has no need for assistive devices; could occasionally crawl and reach; could frequently climb, stoop, kneel, and crouch; and could constantly balance, handle, finger, feel, and grasp. (R. at 345-46.) Dr. McLean opined that "[w]ith regards to work, at least from the spine standpoint, I do feel [Plaintiff] is capable of working full-time at a sedentary capacity with a change of position every three hours with no overhead lifting or working and maximal lifting of 10 pounds." (R. at 538.)

The ALJ therefore did not err by affording less weight to Dr. Dhadvai's RFC opinion than to other physicians' RFC opinions. The conflicting evidence discussed by the ALJ, including objective medical tests and conflicting physician testimony, is supported by the record and could rationally be viewed as substantial evidence inconsistent with Dr. Dhadvai's RFC opinion. Weighing the evidence is the province of the ALJ, and as long as the ALJ's inferences are reasonable this Court must defer to them. *Andrews*, 53 F.3d at 1039; *Batson*, 359 F.3d at 1198; *Matney*, 981 F.2d at 1019. The ALJ's conclusion that the conflicting evidence undermined the credibility of Dr. Dhadvai's opinion was reasonable, and thus the Court will not disturb it.

The ALJ gave a detailed and thorough summary of the facts and conflicting clinical evidence, stated his interpretation thereof, and made findings. *See Embrey*, 849 F.2d at 421. He gave clear and convincing reasons for doing so, and those reasons are supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830. Thus, the ALJ did not err in discounting Dr. Dhadvai's opinion.

**III.    Remedy**

Having found that the ALJ erred in failing to address certain opinions of Dr. McLean and Nurse Campbell, the Court has the discretion to remand the case either for further proceedings or for an award of benefits. *See Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998). The rule in this Circuit is that the Court should:

> credit[] evidence and remand[] for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

Here, even if the ALJ credits Nurse Campbell's opinions indicating that Plaintiff has marked limitations in several areas of social functioning, concentration, memory, and ability to carry out instructions (R. at 547-48), outstanding issues related to whether Plaintiff meets all listing criteria must be resolved at step three before determining whether Plaintiff suffers from one of the Social Security Administration's listed impairment. Likewise, even if the ALJ credits the opinions of Dr. McLean and Nurse Campbell, there are outstanding issues that must be resolved before a determination of disability can be made. Plaintiff argues that a closed period of benefits, from August 2004 to at least March 2006, is merited based solely on the opinion of Dr. McLean. (Dkt. # 14 at 9.) However, in light of the contradictory evidence in the record relevant to the opinions of Dr. McLean and Nurse Campbell (R. at 235-61, 283-89, 334-47), it is not clear that the ALJ would be required to find Plaintiff disabled, even for a closed period. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating that the Commissioner is "responsible for making the determination or decision about whether

you meet the statutory definition of disability" and explaining that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"); *Salvador v. Sullivan*, 917 F.2d 13, *15 (9th Cir. 1990) (declining to remand a case for an award of benefits "because there may be evidence in the record to which the ALJ can point to provide the requisite specific and legitimate reasons for disregarding [a treating physician's] opinion"). Therefore, under these circumstances, the Court will remand for further proceedings.

**CONCLUSION**

The ALJ erred in failing to address certain opinions of Dr. McLean and Nurse Campbell. Because outstanding issues remain before a determination of disability can be made, remand for further proceedings is proper. Therefore,

**IT IS HEREBY ORDERED** that the ALJ's decision is **AFFIRMED IN PART** and **VACATED IN PART**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** for further proceedings consistent with this Order.

**DATED** this 11th day of June, 2009.

_____
G. Murray Snow
United States District Judge